1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                  EASTERN DISTRICT OF CALIFORNIA

10

                          ----oo0oo----

11

12   REVERGE ANSELMO and SEVEN              NO. CIV. 2:12-1422 WBS EFB
     HILLS LAND AND CATTLE COMPANY,
13   LLC,

14            Plaintiffs,                   ORDER RE: MOTION TO REMAND,
                                            MOTIONS TO DISMISS, MOTION TO
15        v.                                STRIKE, MOTIONS FOR SANCTIONS,
                                            AND MOTION REGARDING MEDIATION
16   RUSS MULL, LESLIE MORGAN, a            CONFIDENTIALITY
     Shasta County Assessor-
17   Recorder, COUNTY OF SHASTA,
     BOARD OF SUPERVISORS OF THE
18   COUNTY OF SHASTA, LES BAUGH
     and GLEN HAWES,

19
              Defendants.
20   _____/

21   COUNTY OF SHASTA, AND COUNTY
     OF SHASTA, for the People of
22   the State of California,

23            Cross-Complainant,

24        v.

25   REVERGE ANSELMO; SEVEN HILLS
     LAND AND CATTLE COMPANY LLC;
26   NANCY HALEY; MATTHEW RABE;
     MATTHEW KELLEY; ANDREW JENSEN;
27   and ROES 1 THRU 50,

28

                                1

1    Cross-Defendants.
2    _____/
3                        ----oo0oo----

4  I.    Factual and Procedural Background

5          Plaintiffs Reverge Anselmo and Seven Hills Land and

6  Cattle Company initiated this action in state court on October 6,

7  2008, against defendants Shasta County, the Board of Supervisors

8  of the County of Shasta, and Shasta County officials Russ Mull,

9  Leslie Morgan, Les Baugh, and Glen Hawes.  In their Third Amended

10 Complaint ("TAC"), plaintiffs allege claims against Shasta County

11 and its employees under 42 U.S.C. § 1983.  Plaintiffs' claims

12 arise from defendants' alleged wrongful interference with

13 plaintiffs' use of their land.  Plaintiffs allege that county

14 officials engaged in a variety of wrongful conduct that

15 interfered with plaintiffs' use of their property, such as

16 issuing wrongful notices of grading violations, filing false

17 reports with various officials and agencies, requiring an

18 unnecessary environmental impact study, interfering with

19 plaintiffs' development of their winery, and wrongfully denying

20 plaintiffs' application for a Williamson Act contract.  (Third

21 Am. Compl. ("TAC") ¶¶ 23, 27, 30, 40, 44-58) (Docket No. 1, Ex.

22 B).)

23         Plaintiffs further allege that as part of the county

24 officials' campaign against them, Andrew Jensen, an employee

25 of the California Regional Water Quality Control Board, attempted

26 to intimidate Anselmo by soliciting governmental agencies

27 including the United States Army Corps of Engineers ("Army

28 Corps") to "obtain assertions of violations of other laws" in

order to "create a 'piling on' condition" that deprived
plaintiffs of their right to use their property.  (Id. ¶ 28.)
Plaintiffs and Jensen reached a settlement, and plaintiffs
dismissed their claims against him with prejudice on June 25,
2009.  (Docket No. 68-2.)

        While the case was still pending in state court, Shasta
County initiated cross-claims against plaintiffs and third-party
claims against Jensen and three employees of the Army Corps.  The
Attorney General certified the case under the Westfall Act, 28
U.S.C. § 2697, and thus the United States removed the action to
federal court pursuant to 28 U.S.C. § 1442(a) and § 2679(d)(2) on
May 25, 2012.  The court denied Shasta County's motion to
challenge the Attorney's General certification without prejudice.
(Docket No. 31.)

        Currently before the court are (1) plaintiffs' motion
to remand the case to state court; (2) plaintiffs' motion for
sanctions against Shasta County pursuant to Federal Rule of Civil
Procedure 11; (3) plaintiffs' motion to dismiss Shasta County's
cross-claims for lack of subject matter jurisdiction pursuant to
Rule 12(b)(1) and for failure to state a claim upon which relief
can be granted pursuant to Rule 12(b)(6); (4) Jensen's motion to
dismiss Shasta County's third-party claims pursuant to Rule
12(b)(6); (5) Jensen's motion to strike Shasta County's third-
party claims pursuant to Rule 12(f); and (6) Shasta County's
motion for an order precluding plaintiffs from further violations
of a mediation confidentiality agreement and for monetary
sanctions.
///

1    II.   Discussion

2         A.   Motion to Remand

3              The United States removed this action from state court

4    pursuant to 28 U.S.C. § 1442(a) and § 2679(d)(2) after Shasta

5    County filed third-party claims against three employees of the

6    Army Corps.  In removing the action, the Attorney General

7    certified under the Westfall Act, § 2697(d)(2), that the Army

8    Corps employees were acting within the scope and course of their

9    employment at the time of the alleged conduct, and the United

10   States was substituted as the defendant in place of the Army

11   Corps employees.  Shasta County challenged the Attorney General's

12   certification, and the court denied the challenge without

13   prejudice to it being raised based on new discovery or

14   allegations.  (Docket No. 31.)  In a separate Order, the court

15   granted the United States' Rule 12(b)(6) motion to dismiss Shasta

16   County's claims against it because the § 1983 claims under which

17   Shasta County sought contribution could not be brought against

18   the United States.  (Docket No 33.)  After Shasta County failed

19   to file an amended third-party complaint against the United

20   States within the time provided, the court dismissed Shasta

21   County's third-party claims against the United States with

22   prejudice.[1]  (Docket No. 58.)

23   _____

24        [1]   The proposed order granting dismissal with prejudice
     was submitted by the United States and included dismissal of the
25   claims against the Army Corps employees with prejudice.  As the
     United States had been substituted as the defendant and the
26   motion to dismiss and grant of leave to file an amended complaint
     was limited to the claims against the United States, it was never
27   the court's intention to dismiss any claims against the Army
     Corps employees with prejudice.  The dismissal with prejudice in
28   Docket No. 58 is therefore limited to Shasta County's claims

                                    4

1    Because the sole basis for removal was the claims
2 against the Army Corps employees to which the United States was
3 substituted as the defendant and the claims against the United
4 States have been dismissed with prejudice, plaintiffs now seek to
5 remand the action to state court pursuant to § 1447(c).

6    Section 2679(d)(2) of the Westfall Act provides that
7 the certification of the Attorney General pursuant to that
8 subsection "shall conclusively establish scope of office or
9 employment for purposes of removal."  28 U.S.C. § 2679(d)(2).
10 The Supreme Court has interpreted this provision to mean that,
11 once the Attorney General certifies scope of employment under §
12 2679(d)(2) and triggers removal of the case to federal court, "§
13 2679(d)(2) renders the federal court exclusively competent and
14 categorically precludes a remand to the state court."  Osborn v.
15 Haley, 549 U.S. 225, 243 (2007).

16    In Osborn, the United States removed a case to federal
17 court after the Attorney General certified that the federal
18 employee defendant was acting within the scope of his employment.
19 After removal, the plaintiff successfully challenged the Westfall
20 Act certification and the court denied the United States' motion
21 to be substituted as the defendant and remanded the case to state
22 court.  The Supreme Court held that § 1447(c) did not bar review
23 of the district court's order remanding the case and held that §
24 2697(d)(2) precluded the district court from remanding the case.

25    Given the fact that the remand in Osborn occurred after
26 the district court rejected the Attorney General's certification,

27

28 against the United States.

the Court's analysis at times appears limited to precluding remand under similar circumstances: "Congress gave district courts no authority to return cases to state courts <u>on the ground that the Attorney General's certification was unwarranted</u>"; "[w]ere it open to a district court to remand a removed action <u>on the ground that the Attorney General's certification was erroneous</u>, the final instruction in § 2679(d)(2) would be weightless." <u>Id.</u> at 241-42 (emphasis added).

In contrast to this potentially limiting language, other statements in the opinion unconditionally limit a court's ability to remand a case removed pursuant to § 2679(d)(2):

> [W]hen the Attorney General certifies scope of employment, triggering removal of the case to a federal forum[,] . . . § 2679(d)(2) renders the federal court exclusively competent and categorically precludes a remand to the state court. . . . Our decision . . . leaves the district court without authority to send a certified case back to the state court. . . . [T]he Westfall Act's command that a district court retain jurisdiction over a case removed pursuant to § 2679(d)(2) does not run afoul of Article III.

<u>Id.</u> at 243-45.

When the Attorney General's certification is not challenged and the claims against the United States are subsequently dismissed, district courts have reached different conclusions as to whether <u>Osborn</u>'s ban on remand applies.  In <u>Kebaish v. Inova Health Care Services</u>, 731 F. Supp. 2d 483 (E.D. Va. 2010), the plaintiff voluntarily dismissed its claims against the United States after it had been substituted as the defendant under the Westfall Act and the case had been removed from state court.  The court reasoned that the factual differences between the case before it and <u>Osborn</u> were not material because "<u>Osborn</u>

holds that § 2679(d)(2) provides a conclusive basis for federal subject matter jurisdiction in all cases, regardless of whether certification is ultimately upheld." Kebaish, 731 F. Supp. 2d at 487; accord Boggs-Wilkerson v. Anderson, Civ. No. 2:10-518, 2011 WL 6934598, at *2 (E.D. Va. Nov. 17, 2011).

On the other hand, a district court reached the opposite result in Salazar v. PCC Community Wellness Center, Civ. No. 08-1764, 2010 WL 391383 (N.D. Ill. Jan. 29, 2010). In that case, the plaintiff similarly dismissed the claims against the United States after the case had been removed from state court and the United States had been substituted as the defendant under the Westfall Act. The court emphasized the limiting language in Osborn that "district courts have no authority to return cases to state courts based on the district [']court's disagreement with the Attorney General's scope-of-employment determination.'" Salazar, 2010 WL 391383, at *3 (quoting Osborn, 549 U.S. at 227).

Limiting Osborn to cases in which the Westfall Act certification is rejected is consistent with the language of § 2679(d)(2) and some of the Court's statements in Osborn. Nonetheless, remanding this case based on the difference between it and Osborn, would be difficult, if not impossible, to reconcile with the Court's unconditional and sweeping pronouncement that § 2679(d)(2) "categorically precludes a remand to the state court." Osborn, 549 U.S. at 243.

Remanding this case could also conflict with § 2679(d)(2)'s aim of "'foreclos[ing] needless shuttling of a case from one court to another.'" Id. at 242 (quoting Gutierrez de Martinez v. Lamagno, 515 U.S. 417, 433, n.10 (1995)). Here, the

7

court denied Shasta County's challenge to the Attorney General's certification under § 2679(d)(2), but did so without prejudice to Shasta County renewing its challenge in light of new allegations or evidence.  Assuming Shasta County challenges the Attorney General's certification at a later date, it appears that only the federal court could resolve that challenge.  See Stewart v. State Crop Pest Comm'n, 414 S.E.2d 121, 124 (S.C. 1992) ("[T]he Attorney General's certification is not reviewable by the state court."); cf. Meridian Int'l Logistics, Inc. v. United States, 939 F.2d 740, 744-45 (9th Cir. 1991) (holding that, even though § 2679(d)(2) "is silent on the capacity of the district court to review scope certifications . . . district courts may review the Attorney General's scope determinations").[2]

Accordingly, because this action was removed based on the Attorney General's Westfall Act certification under § 2697(d)(2), the court must deny plaintiffs' motion to remand, and plaintiffs' request for costs under § 1447(c) is moot.  Moreover, even if Osborn is limited to precluding remand only after a successful challenge to Westfall Act certification, the court can properly retain jurisdiction of this case based on plaintiffs' § 1983 claims.

---

[2]    The court was unable to find a single decision by a California state court addressing a challenge to certification under § 2679(d)(2) or the Westfall Act.  When the search extended beyond California, the court found a very limited number of state court decisions addressing certification, but they were limited to the Attorney General's decision not to certify under the Westfall Act.  E.g., Jaskolski v. Daniels, 905 N.E.2d 1, 12-13 (Ind. App. 2009) ("[T]he Westfall Act does not grant to the federal courts exclusive jurisdiction to review the U.S. Attorney General's decision not to certify a purported federal employee under the Act.").

1   B. <u>Plaintiffs' Rule 11 Motion Against Shasta County</u>

2    Plaintiffs request that the court impose Rule 11

3 sanctions against Shasta County based on its addition of the Army

4 Corps employees in its FACC and the resulting delay and removal

5 to federal court that those third-party claims caused.  Rule

6 11(c) provides for the imposition of sanctions if Rule 11(b) is

7 violated, and thus sanctions are appropriate "when a filing is

8 frivolous, legally unreasonable, or without factual foundation,

9 or is brought for an improper purpose."  <u>Simpson v. Lear</u>

10 <u>Astronics Corp.</u>, 77 F.3d 1170, 1177 (9th Cir. 1996).  While

11 imposing sanctions under the court's inherent power requires a

12 finding of bad faith, the imposition of Rule 11 sanctions

13 requires only a showing of objectively unreasonable conduct.  <u>In</u>

14 <u>re DeVille</u>, 361 F.3d 539, 548 (9th Cir. 2004).

15    Rule 11(c)(2)'s "safe harbor provision requires parties

16 filing such motions to give the opposing party 21 days first to

17 'withdraw or otherwise correct' the offending paper."  <u>Holgate v.</u>

18 <u>Baldwin</u>, 425 F.3d 671, 678 (9th Cir. 2005).  The court

19 "enforce[s] this safe harbor provision strictly[] [and] must

20 reverse the award of sanctions when the challenging party failed

21 to comply with the safe harbor provisions, even when the

22 underlying filing is frivolous."  <u>Id.</u>  Plaintiffs do not indicate

23 that they complied with the safe harbor provision, and counsel

24 for Shasta County indicates in a declaration that plaintiffs'

25 Rule 11 motion was not served on Shasta County before it was

26 filed with the court.  (Docket No. 64-1 at ¶ 2.)  Accordingly,

27 the court must deny plaintiffs' motion for Rule 11 sanctions.

28 Moreover, the court is not inclined to take the parties'

1   invitation to weed through their obvious frustrations with each
2   other and be sidetracked from the timely resolution of this case
3   on the merits.   Likewise, the court also denies Shasta County's
4   request for costs as sanctions against plaintiffs for filing the
5   Rule 11 motion.

6       C.   <u>Plaintiffs' Motion to Dismiss</u>

7           1.   <u>Rule 12(b)(1) Motion</u>

8           Plaintiffs first move to dismiss Shasta County's FACC
9   for lack of subject matter jurisdiction pursuant to Rule
10  12(b)(1).   On a motion to dismiss under Rule 12(b)(1), the
11  plaintiff bears the burden of establishing a jurisdictional basis
12  for its claim.   <u>Kokkonen v. Guardian Life Ins. Co. of Am.</u>, 511
13  U.S. 375, 377 (1994).   Because "[f]ederal courts are courts of
14  limited jurisdiction" that "possess only that power authorized by
15  Constitution and statute," <u>id.</u>, a court must dismiss claims over
16  which it has no jurisdiction.   Fed. R. Civ. P. 12(h)(3).

17          Pursuant to 28 U.S.C. § 1367(a), "district courts shall
18  have supplemental jurisdiction over all other claims that are so
19  related to claims in the action within such original jurisdiction
20  that they form part of the same case or controversy under Article
21  III of the United States Constitution."   28 U.S.C. § 1367(a).   "A
22  state law claim is part of the same case or controversy when it
23  shares a 'common nucleus of operative fact' with the federal
24  claims and the state and federal claims would normally be tried
25  together."   <u>Bahrampour v. Lampert</u>, 356 F.3d 969, 978 (9th Cir.
26  2004).

27          Without belaboring the allegations in the TAC and FACC,
28  it is readily apparent that Shasta County's claims for nuisance

                                10

abatement and violations of California Civil Code section 17200

share a common nucleus of operative fact with plaintiffs' § 1983

claims.  The claims attempt to resolve disputes regarding

plaintiffs' use of their property, including their grading of the

ranch property, development of their winery and restaurant, and

their Williamson Act contract.  Moreover, the Supreme Court has

held that, in cases removed under § 28 U.S.C. § 2679(d)(2), "even

if only state-law claims remained after resolution of the federal

question, the District Court would have discretion, consistent

with Article III, to retain jurisdiction." Osborn, 549 U.S. at

245.  Accordingly, the court will deny plaintiffs' motion to

dismiss the cross-claims against them in the TACC for lack of

subject matter jurisdiction.

### 2.  Rule 12(b)(6) Motion

Plaintiffs next move to dismiss Shasta County's

nuisance abatement and section 17200 claims pursuant to Rule

12(b)(6) for failure to state a claim upon which relief can be

granted.  On a motion to dismiss, the court must accept the

allegations in the complaint as true and draw all reasonable

inferences in favor of the plaintiff. Scheuer v. Rhodes, 416

U.S. 232, 236 (1974), overruled on other grounds by Davis v.

Scherer, 468 U.S. 183 (1984); Cruz v. Beto, 405 U.S. 319, 322

(1972).  "To survive a motion to dismiss, a complaint must

contain sufficient factual matter, accepted as true, to 'state a

claim to relief that is plausible on its face.'" Ashcroft v.

Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v.

Twombly, 550 U.S. 544, 570 (2007)).  This "plausibility

standard," however, "asks for more than a sheer possibility that

1  a defendant has acted unlawfully," and "[w]here a complaint

2  pleads facts that are 'merely consistent with' a defendant's

3  liability, it 'stops short of the line between possibility and

4  plausibility of entitlement to relief.'" Id. (quoting Twombly,

5  550 U.S. at 556-57).[3]

6  <center>a. <u>Nuisance Abatement Claim</u></center>

7  Plaintiffs contend that Shasta County fails to plead a

8  cognizable claim for nuisance abatement because California law

9  requires that, "when there is an administrative proceeding

10 available to determine that a public or private nuisance

11 condition exists, it is necessary to allege that proceeding has

12 been employed and a nuisance has been declared after hearing in

13 compliance with due process." (Pls.' Mot. to Dismiss 6:1-5

14 (Docket No. 37).) Plaintiffs do not provide any controlling

15 authority giving rise to such an obligation.

16 When addressing then-existing immunity law for

17 legislative bodies in 1958, the California Supreme Court

18 discussed a requirement that "a legislative body has declared the

19 condition complained of to be a nuisance" in order to assert an

20 "exception to the immunity doctrine <u>where a governmental unit is</u>

21 <u>maintaining a nuisance</u>." <u>Vater v. Glenn County</u>, 49 Cal. 2d 815,

22 820 (1958) (emphasis added). Similarly, <u>Mulloy v. Sharp Park</u>

23

24 [3] "When ruling on a motion to dismiss, [the court] may
   generally consider only allegations contained in the pleadings,
25 exhibits attached to the complaint, and matters properly subject
   to judicial notice." <u>Colony Cove Props., LLC v. City of Carson</u>,
26 640 F.3d 948, 955 (9th Cir. 2011) (internal quotation marks
   omitted). The court will take judicial notice of the Shasta
27 County Code. <u>Id.</u> n.4. The court need not rely on any of the
   other extraneous documents submitted in plaintiffs' request for
28 judicial notice, and thus denies plaintiffs' request as moot.

<center>12</center>

1  Sanitary District, 164 Cal. App. 2d 438 (1st Dist. 1958), relied

2  on Vater in requiring a plaintiff to "show that a legislative

3  body has declared the condition complained of to be a nuisance"

4  in order to bring a claim against a "governmental unit . . . for

5  creating and maintaining a nuisance."  Mulloy, 164 Cal. App. 2d

6  at 441 (emphasis added).  Even assuming these cases are still

7  good law, they do not impose a requirement that an administrative

8  body declare that conduct by an individual amounts to a nuisance

9  before the county can bring a nuisance claim against the

10  individual.

11        Contrary to plaintiffs' theory, the Shasta County Code

12  contemplates the county asserting a nuisance abatement claim as

13  it has in its TAAC.  Shasta County Code section 8.28.010

14  provides, "Every violation of any regulatory or prohibitory

15  provision contained in Division 4 or 18 of the Food and

16  Agricultural Code of the State of California, or of this Code, is

17  expressly declared to be a public nuisance."  Shasta County Code

18  § 8.28.010.  California courts recognize that "nuisance per se

19  arises when a legislative body with appropriate jurisdiction, in

20  the exercise of the police power, expressly declares a particular

21  object or substance, activity, or circumstance, to be a nuisance"

22  and have upheld injunctive relief against a nuisance per se based

23  on a violation of a municipal code.  City of Claremont v. Kruse,

24  177 Cal. App. 4th 1153, 1163-66 (2d Dist. 2009) (internal

25  quotation marks omitted).

26        Although the Shasta County Code provides procedures for

27  a hearing to address a nuisance, it does not establish that a

28  hearing is a prerequisite to a civil action and contemplates the

13

county's initiation of civil actions to resolve an alleged nuisance. See Shasta County Code § 8.28.020 ("The board of supervisors on its own motion or an enforcing officer may invoke the provisions of this chapter in lieu of or in addition to instituting civil enforcement proceedings or a criminal prosecution as to any violation of this code that has occurred or is occurring or as to any other nuisance."), § 8.28.070 ("This chapter is an alternative to and does not supersede any other provision of law that authorizes a nuisance to be abated or enjoined."), § 8.28.030(C) ("The failure of any person to receive a notice given pursuant to subsection B of this section shall not constitute grounds for any court to invalidate any subsequent action by the county or any of its officers, agents or employees to abate the nuisance.").

While California Government Code section 25845 provides for minimum requirements for an ordinance that establishes the procedures for abatement of a nuisance, it neither requires counties to enact an ordinance nor precludes an ordinance from providing for judicial remedies in lieu of administrative remedies. See Cal. Gov't Code § 25845(a). Similarly, section 51250 outlines procedures to address material breaches of a Williamson Act contract, but expressly provides that the remedy provided for in the section "is in addition to any other available remedies for breach of contract." Cal. Gov't Code § 51250(a); see also id. ("Except as expressly provided in this section, this section is not intended to change the existing land use decisionmaking and enforcement authority of cities and counties including the authority conferred upon them by this

14

chapter to administer agricultural preserves and contracts.").[4]

Plaintiffs' reliance on the primary jurisdiction doctrine is also misplaced.  "The doctrine of primary jurisdiction, like the rule requiring exhaustion of administrative remedies, is concerned with promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties."  United States v. W. Pac. R. Co., 352 U.S. 59, 63 (1956).  The doctrine "applies where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body; in such a case the judicial process is suspended pending referral of such issues to the administrative body for its views."  Id. at 63-64.  It is a prudential doctrine that "can be used, in instances where the federal courts do have jurisdiction over an issue, but decide

---

[4]    The court previously rejected plaintiffs' reliance on section 51250 in their related case:

> With respect to plaintiffs' allegation that they were entitled to a notice and hearing under the terms of the Williamson Act before defendants determined that the chapel was not a compatible use[,] . . . [t]he second Williamson Act provision plaintiffs cite, Cal. Gov't Code § 51250, provides that a landowner may request a public hearing upon receiving notice that the city or county administering the Williamson Act contract has determined that the landowner is likely in material breach. Plaintiffs do not allege, however, that they ever demanded a public hearing.  Neither provision, therefore, suggests that plaintiffs were entitled to a notice and hearing under state law.

Anselmo v. County of Shasta, --- F. Supp. 2d ----, ----, 2012 WL 2090437, at *n.5 (E.D. Cal. June 8, 2012).

that a claim 'requires resolution of an issue of first
impression, or of a particularly complicated issue that Congress
has committed to a regulatory agency.'"   GCB Commc'ns, Inc. v.
U.S. S. Commc'ns, Inc., 650 F.3d 1257, 1264 (9th Cir. 2011).
Plaintiffs have not sufficiently articulated, and the court
cannot surmise, any issues that require resolution by an
administrative body, why special competence is needed, or what
administrative body possesses that competence.

The remainder of plaintiffs' arguments attack the
merits of the parties' claims, not the sufficiency of the
allegations in the TACC, and cannot be resolved in a Rule
12(b)(6) motion.  Because Shasta County sufficiently alleges a
nuisance abatement claim, the court will deny plaintiffs' motion
to dismiss that claim.

### b.  UCL Claim

California's UCL prohibits "any unlawful, unfair or
fraudulent business act or practice . . . ."  Cal. Bus. & Prof.
Code § 17200.  Because counties are not "persons" as defined in
the UCL, see id. § 17201, section 17204 of the UCL authorizes
counties to bring a UCL claim under limited circumstances,
including a case brought "by a county counsel authorized by
agreement with the district attorney in actions involving
violation of a county ordinance."  Id. § 17204; see generally
Cnty. of Santa Clara v. Astra U.S., Inc., 428 F. Supp. 2d 1029,
1033-36 (N.D. Cal. 2006).

In its TACC, Shasta County alleges that "Cross-
Complainant County of Shasta, for the People of the State of
California, prior to filing this Cross-Complaint for violation of

16

Business and Professions Code Section 17200 et seq., have the authorization by agreement with the District Attorney of the County of Shasta to bring this cause of action." (TACC ¶ 27.) Plaintiffs' contend that section 17204 requires county counsel, not the county itself, to assert the UCL claim on behalf of the people of the state. Neither section 17204 nor the cases applying it appear to contemplate that county counsel would be the named representative. See generally Cnty. of Santa Clara, 428 F. Supp. 2d at 1033-36. The court will accordingly deny plaintiffs' motion to dismiss Shasta County's UCL claim.

D.   Jensen's Motions to Dismiss and Strike

Jensen moves to dismiss Shasta County's claims for contribution and indemnification pursuant to Rule 12(b)(6) on the ground that § 1983 does not provide for either claim. The Ninth Circuit has stated that "[t]here is no federal right to indemnification provided in 42 U.S.C. § 1983." Allen v. City of Los Angeles, 92 F.3d 842, 845 n.1 (1996), overruled on other grounds, Acri v. Varian Assocs., Inc., 114 F.3d 999 (9th Cir. 1997).

"Typically, a right to contribution is recognized when two or more persons are liable to the same plaintiff for the same injury and one of the joint tortfeasors has paid more than his fair share of the common liability." Nw. Airlines, Inc. v. Transport Workers Union of Am., 451 U.S. 77, 87-88 (1981). However, "[a]t common law there was no right to contribution among joint tortfeasors." Id. at 87. Thus, "a right to contribution may arise in either of two ways: first, through the affirmative creation of a right of action by Congress, either

17

1  expressly or by clear implication; or, second, through the power

2  of federal courts to fashion a federal common law of

3  contribution."  Tx. Indus., Inc. v. Radcliff Materials, Inc., 451

4  U.S. 630, 638 (1981).

5        The text of § 1983 does not provide for a right to

6  contribution,[5] and Shasta County has not identified any statement

7  in its legislative history that suggests Congress intended for

8  such a right to exist.  Although the Supreme Court has not

9  addressed whether federal courts have the power to create a right

10 to contribution under § 1983, it has unequivocally held that

11 courts lack the power to do so under Title VII, the Equal Pay

12 Act, and federal securities law.  Nw. Airlines, Inc., 451 U.S. at

13 98; Tex. Indus., Inc., 451 U.S. at 645; see also Smart v. Int'l

14 Broth. of Elec. Workers, Local 702, 315 F.3d 721, 727 (7th Cir.

15 2002) ("[I]n the more than two decades since the Northwest

16 Airlines decision, the Supreme Court has become ever more

17

18        [5]    The entirety of § 1983 states:

19        Every person who, under color of any statute, ordinance,
         regulation, custom, or usage, of any State or Territory
20       or the District of Columbia, subjects, or causes to be
         subjected, any citizen of the United States or other
21       person within the jurisdiction thereof to the deprivation
         of any rights, privileges, or immunities secured by the
22       Constitution and laws, shall be liable to the party
         injured in an action at law, suit in equity, or other
23       proper proceeding for redress, except that in any action
         brought against a judicial officer for an act or omission
24       taken in such officer's judicial capacity, injunctive
         relief shall not be granted unless a declaratory decree
25       was violated or declaratory relief was unavailable. For
         the purposes of this section, any Act of Congress
26       applicable exclusively to the District of Columbia shall
         be considered to be a statute of the District of
27       Columbia.

28

reluctant to imply private rights of action . . . .").

Often relying on Northwest Airlines and Texas Industries, the vast majority of federal courts that have addressed the issue have concluded that § 1983 does not provide for a contribution or indemnity claim.  See, e.g., AE ex rel. Hernandez v. Portillo, Civ. No. 1:09-2204 LJO DLB, 2011 WL 3740829, at *8 (E.D. Cal. Aug. 24, 2011) (indemnity); Hurley v. Horizon Project, Inc., Civ. No. 08-1365, 2009 WL 5511205, at *2-5 (D. Or. Dec. 3, 2009) (contribution) (citing cases); Banks v. City of Emeryville, 109 F.R.D. 535, 539 (N.D. Cal. Aug. 27, 1985) (contribution and indemnity).

The fact that Jensen is an alleged co-conspirator with Shasta County and its employees in the alleged scheme to violate plaintiffs' rights does not change the analysis.  In Texas Industries, the Supreme Court held that there is no right to contribution under the federal antitrust laws.  The court followed the same analysis as in Northwest Airlines, first determining that Congress did not create the right in the statutes and, second, that the court lacked the power to fashion a federal common law right to contribution.  Tex. Indus., Inc., 451 U.S. at 638.  It was immaterial to the Court's analysis that the individuals against whom the defendant sought contribution were "participants in the unlawful conspiracy on which recovery was based."  Id. at 632.  Similarly, in rejecting the employer's theory that the Equal Pay Act and Title VII provide for a right to contribution, the Court "assume[d] that the plaintiffs . . . could have recovered from either the union or the employer, under both the Equal Pay Act and Title VII, and that it is unfair to

1  require [the employer] to pay the entire judgment." Nw.

2  Airlines, Inc., 451 U.S. at 89.

3          In Texas Industries, the Court also emphasized that the

4  federal securities statutes "were not adopted for the benefit of

5  the participants in a conspiracy to restrain trade" and that

6  defendant "'is a member of the class whose activities Congress

7  intended to regulate for the protection and benefit of an

8  entirely distinct class.'" Tex. Indus., Inc., 451 U.S. at 639

9  (quoting Piper v. Chris-Craft Indus., Inc., 430 U.S. 1, 37

10  (1977)).  The Court raised the same point in concluding that the

11  Equal Pay Act and Title VII did not provide for contribution.

12  Nw. Airlines, Inc., 451 U.S. at 91-92.  This reasoning applies

13  equally to the present case because, assuming plaintiffs'

14  allegations are true, § 1983 was intended to protect plaintiffs

15  from Shasta County's conduct, not Shasta County from injuries

16  caused to plaintiffs by Shasta County and its co-conspirators'

17  conduct.

18          In contrast to bringing a claim for contribution or

19  indemnity derived from § 1983, § 1983 defendants have sought

20  indemnification or contribution under state law claims.  For

21  example, in Banks, the plaintiff was burned to death while in the

22  custody of the city jail and her representatives sued the city

23  under § 1983.  Banks, 109 F.R.D. at 537.  The city claimed that

24  the mattress in plaintiff's cell was defective and caused the

25  fire to spread too quickly.  Id. at 537-38.  Although the jail

26  could not seek contribution from the mattress manufacturers under

27  § 1983, it was able to assert third-party claims against the

28  manufacturers in the § 1983 action based on state law causes of

1    action, such as strict products liability, breach of warranty,

2    and negligence.  Id. at 539-40; see id. at 540-41 ("One

3    determination that a jury might make is that the tortious actions

4    of the third party defendants are, in whole or in part,

5    responsible for the decedent's death, and that the defendants

6    should therefore be relieved of liability to the plaintiffs to

7    that extent.").  Shasta County's TACC does not, however, allege

8    independent state law claims giving rise to a right to indemnity

9    or contribution.

10          Accordingly, because § 1983 does not provide for a

11   federal right to contribution or indemnity and Shasta County has

12   not alleged any state law claims, the court will grant Jensen's

13   motion to dismiss the third-party claims against him.[6]

14          E.   Shasta County's Motion Re: Mediation Confidentiality

15          In the final motion before the court, Shasta County

16   moves for an order prohibiting plaintiffs from "further

17   disclosing mediation statements and mediation briefs to third

18   parties, including the press, in violation of a Mediation

19   Confidentiality Agreement, and for an Order imposing monetary

20   sanctions against Plaintiffs and in favor of the County."

21   (Docket No. 43 at 1:10-13.)  In making its motion, Shasta County

22   invokes the "inherent power" of the court to "impose sanctions

23   upon a party and/or its counsel for bad faith litigation

24   conduct."  (Id. at 5:8-10.)

25          Shasta County incorrectly views the court's inherent

26

27          [6]   Because the court will grant Jensen's motion to

28   dismiss, his motion to strike Shasta County's third-party claims
     under Rule 12(f) is moot and will be denied as such.

power as extending to extra-judicial conduct that has no legal effect on the proceedings before the court.  In <u>Chambers v. NASCO, Inc.</u>, 501 U.S. 32 (1991), the Supreme Court discussed courts' inherent powers in detail, revealing a common thread that the courts' inherent powers are tied to their need "'to manage their own affairs so as to achieve the orderly and expeditious disposition of cases'" and remedy "abuses [of] the judicial process."  <u>Chambers</u>, 501 U.S. at 43-45 (quoting <u>Link v. Wabash R. Co.</u>, 370 U.S. 626, 630–31 (1962)).  Even when recognizing that the "power reaches both conduct before the court and that beyond the court's confines," the Court justified this extension as remedying "disobedience to the orders of the Judiciary, regardless of whether such disobedience interfered with the conduct of trial."  <u>Id.</u> at 44.

Here, independent of any involvement of the court, the parties agreed to mediate their case before the Judicial Arbitration Mediation Service.  This court had nothing to do with that agreement and the parties' actions pursuant to the mediation are independent of this proceeding.  Remedying any alleged breach of a mediation agreement occurring outside the confines of this proceeding is beyond the reach of the court's inherent power.[7]  Further, even if it could be argued that the court's inherent power extended to those mediation proceedings, this court would

---

[7]    In contrast, courts have enforced mediation confidentiality agreements when the documents subject to the agreements are submitted to the court or offered at trial.  <u>E.g.</u>, <u>Facebook, Inc. v. Pac. Nw. Software, Inc.</u>, 640 F.3d 1034, 1041 (9th Cir. 2011) (upholding the district court's exclusion of evidence that was the subject of a mediation confidentiality agreement).

have no interest or desire to interject itself into those extra-
judicial proceedings.  Accordingly, the court must deny Shasta
County's motion for an order precluding plaintiffs from further
violations of the mediation confidentiality agreement and for
monetary sanctions.

　　　　　　IT IS THEREFORE ORDERED that

　　　　　　(1) plaintiffs' motion to remand (Docket No. 46) be,
and the same hereby is, DENIED;

　　　　　　(2) plaintiffs' motion for Rule 11 sanctions (Docket
No. 40) be, and the same hereby is, DENIED;

　　　　　　(3) plaintiffs' motion to dismiss (Docket No. 35) be,
and the same hereby is, DENIED;

　　　　　　(4) Jensen's motion to dismiss (Docket No. 59) be, and
the same hereby is, GRANTED;

　　　　　　(5) Jensen's motion to strike (Docket No. 61) be, and
the same hereby is, DENIED as moot; and

　　　　　　(6) Shasta County's motion for an order precluding
plaintiffs from further violations of mediation confidentiality
and for monetary sanctions (Docket No. 43) be, and the same
hereby is, DENIED.

　　　　　　Shasta County has twenty days from the date this Order
is filed to file amended third-party claims against Jensen, if it
can do so consistent with this Order.

DATED:  October 10, 2012

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

23