1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                          EASTERN DISTRICT OF CALIFORNIA

10

                                   ----oo0oo----

11

12   REVERGE ANSELMO and SEVEN            NO. CIV. 2:12-1422 WBS EFB
     HILLS LAND AND CATTLE COMPANY,
13   LLC,

14            Plaintiffs,                 ORDER RE: MOTION FOR
                                          PRELIMINARY INJUNCTION
15        v.

16   RUSS MULL, LESLIE MORGAN, a
     Shasta County Assessor-
17   Recorder, COUNTY OF SHASTA,
     BOARD OF SUPERVISORS OF THE
18   COUNTY OF SHASTA, LES BAUGH
     and GLEN HAWES,
19
              Defendants.
20   _____/

21   COUNTY OF SHASTA, AND COUNTY
     OF SHASTA, for the People of
22   the State of California,

23            Cross-Complainant,

24        v.

25   REVERGE ANSELMO; SEVEN HILLS
     LAND AND CATTLE COMPANY LLC;
26   NANCY HALEY; MATTHEW RABE;
     MATTHEW KELLEY; ANDREW JENSEN;
27   and ROES 1 THRU 50,

28

                                      1

1    Cross-Defendants.

2   _____/

3                    ----oo0oo----

4         Defendant and cross-plaintiff Shasta County seeks a

5   preliminary injunction relating to its cross-claims for nuisance

6   per se against plaintiffs and cross-defendants Reverge Anselmo

7   and Seven Hills Land and Cattle Company based on plaintiffs'

8   activities on their property located in Shasta County.

9   I.   Factual and Procedural Background

10        Plaintiffs initiated this action in state court against

11  defendants Shasta County, the Board of Supervisors of the County

12  of Shasta, and Shasta County officials Russ Mull, Leslie Morgan,

13  Les Baugh, and Glen Hawes.  In their Third Amended Complaint,

14  plaintiffs allege claims against Shasta County and its employees

15  under 42 U.S.C. § 1983.  Plaintiffs' claims arise from

16  defendants' alleged wrongful interference with plaintiffs' use of

17  two pieces of real property.  The first is a 670-acre ranching

18  property identified by assessor's parcel numbers ("APN")

19  093-260-025, 093-260-024, and 093-260-023 ("ranch property"), and

20  the second is a 1,500-acre property where plaintiffs operate

21  Anselmo Vineyards, located at 28740 Inwood Road in Shingletown,

22  APN 094-050-021 ("winery property").

23        Plaintiffs' winery property is located in a Shasta

24  County land use zone designated "Exclusive Agricultural" and is

25  also approved for an "Agricultural Preserve," which allows the

26  landowners to apply for a Williamson Act contract with the state.

27  (Simon Decl. ¶ 5 (Docket No. 50-17).)  Under the Williamson Act,

28  cities and counties may enter into contracts with land owners of

                              2

qualified property to retain the agricultural, recreational, or open-space use of the land in exchange for lower property tax assessments.  <u>See</u> Cal. Gov't Code § 51200 <u>et seq</u>.  Plaintiffs received a Williamson Act contract for the winery property in 2006, but filed a notice of Non-Renewal for a 7.5-acre portion of the winery property on April 24, 2008.  (Simon Decl. ¶¶ 5, 15, & Ex. 14; Mull Decl. Ex. 6 (Docket No. 50-13).)  Shasta County also issued a use permit for plaintiffs to operate a "small winery" on the property and subsequently approved a conditional use permit allowing plaintiffs to operate a "medium winery" on the property. (Simon Decl. ¶¶ 4, 6, 8.)

        In their Third Amended Complaint, plaintiffs allege that county officials engaged in a variety of wrongful conduct that interfered with plaintiffs' use of their property, such as issuing wrongful notices of grading violations, filing false reports with various officials and agencies, requiring an unnecessary environmental impact study, and interfering with plaintiffs' development of their winery.  (Third Am. Compl. ¶¶ 23, 27, 30, 40, 44-58) (Docket No. 1, Ex. B).)

        While the case was still pending in state court, Shasta County initiated cross-claims for nuisance per se against plaintiffs.  Shasta County's nuisance per se claims are based on plaintiffs' grading on their ranch property and construction or conversion of structures on their winery property.  Shasta County specifically requests the court to enter injunctions against plaintiffs on the following six alleged nuisances per se:

    (1) plaintiffs' grading on the ranch property without a grading permit and plaintiffs' farming operations on the ranch

property;

(2) plaintiffs' construction, use, and occupancy of an entertainment event tent on the winery property without a building permit or certificate of occupancy;

(3) plaintiffs' conversion, use, and occupancy of a horse barn for winery offices on the winery property without a building permit or certificate of occupancy;

(4) plaintiffs' construction, use, and occupancy of a part of their winery structure that was converted into a restaurant and dining room without a required building permit, use permit, zone amendment, or certificate of occupancy, and without required access and parking for disabled persons pursuant to the Americans with Disabilities Act, 42 U.S.C. §§ 12101-12183, ("ADA");

(5) plaintiffs' construction, use, and occupancy of a wood structure on the winery property without a required building permit or certificate of occupancy; and

(6) plaintiffs' construction, use, and occupancy of a chapel on the winery property without a required building permit, use permit, zone amendment, or certificate of occupancy, and without required access for disabled persons pursuant to the ADA.

In opposing Shasta County's motion for a preliminary injunction, plaintiffs expend a great amount of time rehashing arguments the court rejected in its October 11, 2012 Order and thus the court will not address those arguments a second time. The court will also not address plaintiffs' procedurally improper and unnecessary request for sanctions under Federal Rule of Civil Procedure 11 against Shasta County.

///

1  II.  <u>Discussion</u>

2            To succeed on a motion for a preliminary injunction, a
3  plaintiff must establish that (1) it is likely to succeed on the
4  merits; (2) it is likely to suffer irreparable harm in the
5  absence of preliminary relief; (3) the balance of equities tips
6  in its favor; and (4) an injunction is in the public interest.
7  <u>Winter v. Natural Res. Def. Council, Inc.</u>, 555 U.S. 7, 20 (2008);
8  <u>Perfect 10, Inc. v. Google, Inc.</u>, 653 F.3d 976, 979 (9th Cir.
9  2011).  The Supreme Court has repeatedly emphasized that
10 "injunctive relief [i]s an extraordinary remedy that may only be
11 awarded upon a clear showing that the plaintiff is entitled to
12 such relief."  <u>Winter</u>, 555 U.S. at 22.

13            "The concept of a nuisance per se arises when a
14 legislative body with appropriate jurisdiction, in the exercise
15 of the police power, expressly declares a particular object or
16 substance, activity, or circumstance, to be a nuisance."  <u>Beck</u>
17 <u>Dev. Co. v. S. Pac. Transp. Co.</u>, 44 Cal. App. 4th 1160, 1206 (3d
18 Dist. 1996).  "[T]o be considered a nuisance per se the object,
19 substance, activity or circumstance at issue must be expressly
20 declared to be a nuisance by its very existence by some
21 applicable law."  <u>Id.</u> at 1207.  To establish nuisances per se,
22 "no proof is required, beyond the actual fact of their
23 existence."  <u>City of Costa Mesa v. Soffer</u>, 11 Cal. App. 4th 378,
24 382 (4th Dist. 1992); <u>accord</u> <u>City of Claremont v. Kruse</u>, 177 Cal.
25 App. 4th 1153, 1166 (2d Dist. 2009) (rejecting defendants'
26 argument that the city needed to show that defendants' conduct
27 caused "actual harm" because such a showing is not required to
28 prove a nuisance per se).

1    California Government Code section 38771 provides, "By
2  ordinance the city legislative body may declare what constitutes
3  a nuisance."  Here, Shasta County Code section 8.28.010 provides,
4  "Every violation of any regulatory or prohibitory provision
5  contained in Division 4 or 18 of the Food and Agricultural Code
6  of the State of California, or of this Code, is expressly
7  declared to be a public nuisance."  When municipalities have
8  enacted similar ordinances, California courts have found
9  nuisances per se when defendants failed to comply with various
10 provisions of the municipal codes.  <u>See, e.g.</u>, <u>Kruse</u>, 177 Cal.
11 App. 4th at 1165-66 (failure to obtain a business license and tax
12 certificate); <u>City of Corona v. Naulls</u>, 166 Cal. App. 4th 418,
13 427 (4th Dist. 2008) (failure to obtain Department of Planning
14 approval and zoning variance).

15    A.   <u>Grading on the Ranch Property</u>

16    In relevant part, Shasta County Code section 12.12.020
17 defines "grading" as "movement of any earth materials . . .
18 [w]hich damages or has the potential to significantly damage
19 directly, or indirectly through erosion, any natural or manmade
20 watercourse."  The Code prohibits grading "without a grading
21 permit," unless the activity is exempt from the permit
22 requirement.  Shasta County Code §§ 12.12.040, 12.12.050.  One of
23 the exemptions to the grading permit requirement is
24 "[c]ultivation and production of agricultural products, including
25 but not limited to . . . the rearing and management of
26 livestock."  <u>Id.</u> § 12.12.050(A)(1).  This exception to the permit
27 requirement does not apply if the "grading will adversely affect
28 any off-site drainage or aquatic habitat."  <u>Id.</u> § 12.12.050(B).

6

1    In his October 15, 2007, Inspection Report, Andrew
2 Jensen of the Central Valley Regional Water Quality Control Board
3 concluded that "the majority of the site had been graded" and
4 that "there was a small tributary of South Fork Bear Creek that
5 had been completely graded with heavy equipment." (Jensen Dep.
6 Ex. 35; see also Pisano Decl. Ex. 2 (Docket No. 50-1).)  Kevin
7 Westlake, a Senior Environmental Health Specialist for Shasta
8 County also toured the ranch property on November 29, 2007, and
9 "observed that there had been recent grading." (Westlake Decl. ¶
10 5 & Ex. 4 (Docket No. 50-11).)  Shasta County has thus submitted
11 evidence making it likely that plaintiffs conducted grading near
12 the South Fork Bear Creek on their ranch property and it is
13 undisputed that plaintiffs did not obtain a grading permit.
14    The parties appear to agree that plaintiffs' grading
15 would come within the permit exception for agricultural and
16 raising livestock so long as the grading did not "adversely
17 affect any off-site drainage or aquatic habitat."  Shasta County
18 Code § 12.12.050(B).  On October 30, 2007, Shasta County issued a
19 "Notice of Grading Violation" to plaintiffs, which stated that
20 the grading activities were "impacting areas of the South Fork of
21 Bear Creek." (Mull Decl. Ex. 7.)  In his declaration, Russ Mull,
22 the Director of Shasta County Department of Resource Management,
23 indicated that the County had determined that the agricultural
24 exemption to the permit requirement did not apply. (Id. ¶¶ 10-
25 11.)  Jensen also concluded in his report that "a significant
26 amount of sediment [] had been discharged into the creek due to
27 the grading," (Jensen Dep. Ex. 35), and testified at his
28 deposition that he believed South Fork Bear Creek flows into

7

"Bear Creek proper and then ultimately into the Sacramento River," thus plaintiffs' grading activities "potentially could impact below because everything flows downstream."  (Jensen Dep. 68:1-23 (Pisano Decl. Ex. 1).)

Plaintiffs, however, contend that the agricultural exemption applies because there is no evidence of any adverse effect from their conduct, which they describe as the removal of "berry vines and debris from a pasture."  (Minasian Decl. ¶ 4 & Ex. A (Docket No. 85); see Minasian Decl. Ex. C (letter from plaintiffs' counsel to Shasta County indicating that water samples taken by the Regional Water Quality Control Board and Department of Fish and Game "do not show any adverse impact").)

Even assuming Shasta County is likely to establish that plaintiffs were required to obtain a grading permit because their grading "adversely affect[ed] any off-site drainage or aquatic habitat," granting the injunction Shasta County requests is not appropriate.  First, based solely on the nuisance per se resulting from plaintiffs' grading without a permit, Shasta County requests the court to enjoin all "farming operations" on the ranch property.  While the grading may have been performed to advance plaintiffs' farming and ranching operations, Shasta County has not provided any authority that the nuisance per se resulting from the grading extends to all related activities on the property.  The request to enjoin all "farming operations" on the ranch property is simply too broad and falls short of the mandate in Federal Rule of Civil Procedure 65 that any injunction "state its terms specifically" and "describe in reasonable detail . . . the act or acts restrained."  Fed. R. Civ. P. 65(d)(1)(B)-

8

(C).

There is also no evidence suggesting that a more narrow injunction prohibiting all grading operations is necessary.  The original grading at issue occurred in 2007 and Mull indicates that he observed evidence of grading when he toured the Ranch property on February 1, 2008.  (Mull Decl. ¶ 14.)  Neither party has suggested, however, that the grading is continuing today or will resume in the future and even Mull describes plaintiffs' need to obtain a permit in order to "cure the grading violation for [plaintiffs] having <u>graded</u>."  (<u>Id.</u> ¶ 21 (emphasis added).)

The Ninth Circuit has explained that, "[a]s a general rule, '[p]ast wrongs are not enough for the grant of an injunction'; an injunction will issue only if the wrongs are ongoing or likely to recur."  <u>F.T.C. v. Evans Prods. Co.</u>, 775 F.2d 1084, 1087 (9th Cir. 1985) (quoting <u>Enrico's, Inc. v. Rice</u>, 730 F.2d 1250, 1253 (9th Cir. 1984)) (second alteration in original); <u>cf.</u> <u>Nat'l Wildlife Fed'n v. Burlington N. R.R., Inc.</u>, 23 F.3d 1508, 1511 (9th Cir. 1994) ("Federal courts are not obligated to grant an injunction for every violation of the law. . . . The plaintiff must make a showing that a violation of the [Endangered Species Act] is at least likely in the future.").  Accordingly, because there is no evidence suggesting that plaintiffs are currently grading or intend to grade the ranch property in the future, the court will deny Shasta County's motion for a preliminary injunction relating to plaintiffs' grading on their ranch property.

B.   <u>Construction and Conversion of Structures on the Winery</u>
     <u>Property</u>

9

1    Shasta County Code subsection 16.04.150(A) provides,

2 "No person shall do, cause or permit to be done any work for

3 which a permit is required by this chapter unless a permit for

4 that work is first obtained."  Similarly, the following section

5 states, "No person shall erect, construct, enlarge, alter,

6 repair, move, install, improve or convert a structure or mobile

7 home, or any portion thereof . . . without first obtaining a

8 valid permit for such work when a permit is required by this

9 chapter . . . ."  Shasta County Code § 16.04.160(A).[1]

10    Shasta County has submitted sufficient evidence to show

11 it can likely prove that plaintiffs performed the following work

12 on the winery property without obtaining a building permit: 1)

13 construction of an event tent, (Simon Decl. ¶ 30; Bellinger Decl.

14 ¶¶ 4, 7 & Exs. 23 & 25 (Docket No. 50-22)); 2) conversion of a

15 horse barn into offices for the winery, (Simon Decl. ¶¶ 20, 30;

16 Bellinger Decl. ¶¶ 4, 7 & Exs. 23, 25); 3) conversion of part of

17 the winery structure into a restaurant and dining room, (Simon

18 Decl. ¶ 19; Bellinger Decl. ¶ 7 & Ex. 25); 4) construction of a

19 wood structure next to the winery building, (Simon Decl. ¶ 30;

20 Bellinger Decl. ¶¶ 4, 7, 9 & Exs. 23, 25);[2] and 5) construction of

21

22

23    [1]    Shasta County also cites to sections of the California
Building Code as giving rise to plaintiffs' violations.  However,
24 Shasta County Code section 8.28.010 declares a nuisance per se
for violations of "any regulatory or prohibitory provision
25 contained in Division 4 or 18 of the Food and Agricultural Code
of the State of California, or of this Code."  It does not appear
26 to extend to violations of the California Building Code.

27    [2]    Shasta County indicates that the wood structure appears
to house recreational vehicles.  At oral argument, plaintiffs'
28 counsel indicated that it houses portable restrooms.

10

1   a chapel,[3] (Simon Decl. ¶ 27; Bellinger Decl. ¶ 4 & Ex. 23).

2   After determining that each structure was completed without a

3   building permit, Shasta County Building Inspector/Code

4   Enforcement Officer Jerry Bellinger posted "Red Tag" orders

5   prohibiting entry into each structure and saw Anselmo remove all

6   of the "Red Tag" orders. (Bellinger Decl. ¶¶ 5-6, 8 & Exs. 24,

7   26.)[4]

8        Plaintiffs do not dispute that they completed the work

9   without obtaining building permits.[5]  Shasta County is thus likely

10  _____

11      [3]   There is an ongoing dispute between the parties about
    whether the chapel is for only private use or is available for
12  public uses, such as weddings and communions.  In his
    declaration, Anselmo states that the chapel "is not utilized for
13  weddings or public use associated with the winery or restaurant"
    and is only used by himself "and occasional guests and visiting
14  priests and nuns."  (Anselmo Decl. ¶ 8 (Docket No. 86).)
    Plaintiffs also submitted a letter from the Catholic Bishop of
15  Sacramento indicating permission is not granted for mass on
    Sundays or for "weddings, baptisms and other sacraments."  (Id.
16  Ex. G.)

17      [4]   Shasta County also bases its nuisance per se claims on
    plaintiffs' failure to obtain certificates of occupancy for the
18  five structures.  As authority for the requirement for a
    certificate of occupancy, however, Shasta County cites only to
19  Shasta County Code subsections 16.04.150(B) and 16.04.160(A).
    Subsection 16.04.150(B) addresses a change in occupancy after a
20  certificate of occupancy has already been issued and subsection
    16.04.160(A) is limited to requiring building permits.  See
21  Shasta County Code § 16.04.150(B) ("No person shall change or
    permit or cause a change of the occupancy of any structure for
22  which a certificate of occupancy has been issued, unless a new
    certificate of occupancy has first been secured from the building
23  official."), § 16.04.160 ("No person shall erect, construct . . .
    without first obtaining a valid permit for such work when a
24  permit is required by this chapter . . . .").

25      [5]   Plaintiffs applied for permits for the restaurant
    conversion and chapel, but did not submit additionally requested
26  information and thus the permits were never issued.  (See Simon
    Decl. ¶¶ 16, 24-25, 27-28 & Exs. 15, 18, 20, 21.)
27      The court assumes that building permits were required
    for each of the five structures for purposes of this motion.
28  Plaintiffs contend that building permits were not required for
    the office or wooden structure that houses the portable

                            11

1    to prevail on its nuisance per se claims based on plaintiffs'

2    violations of Shasta County Code subsections 16.04.150(A) and

3    16.04.150(A).[6]

4           According to Shasta County, a finding that it is likely

5    to prevail on its nuisance per se claims is sufficient, in

6    itself, to grant its motion for a preliminary injunction.  Shasta

7    County relies on the California Supreme Court's holding that,

8    "[w]here a governmental entity seeking to enjoin the alleged

9    violation of an ordinance which specifically provides for

10   injunctive relief establishes that it is reasonably probable it

11   will prevail on the merits, a rebuttable presumption arises that

12   the potential harm to the public outweighs the potential harm to

13   the defendant."  IT Corp. v. Cnty. of Imperial, 35 Cal. 3d 63, 72

14   (1983).  If, however, "the defendant shows that it would suffer

15   grave or irreparable harm from the issuance of the preliminary

16   injunction, the court must then examine the relative actual harms

17   to the parties."  Id.

18          Courts have held, however, that federal, not state,

19   ────────────────

20   restrooms.

21          [6]    Shasta County also contends that the operation of the
     restaurant and chapel are not allowable uses under its zoning
22   laws, plaintiffs' conditional use permit for a "medium winery,"
     and plaintiffs' Williamson Act contract.  Because the court finds
23   that Shasta County is likely to prevail on its nuisance per se
     claims based on plaintiffs' failure to obtain building permits,
24   it need not address the other theories underlying its nuisance
     per se claims.  Likewise, the court need not address Shasta
25   County's additional theories for its nuisance per se claims,
     namely California's Unfair Competition Law, Cal. Bus. & Prof.
26   Code §§ 17200-17210, and California's general nuisance statute,
     Cal. Civ. Code § 3479.  Shasta County also argues that
27   plaintiffs' failure to provide the required ADA access and
     parking constitutes a nuisance per se, but did not allege claims
28   for or violations of the ADA in its First Amended Cross-
     Complaint.

standards govern issuance of a preliminary injunction when a
federal court is sitting in diversity or exercising supplemental
jurisdiction over state law claims.  For example, in <u>Ferrero v.</u>
<u>Associated Materials Inc.</u>, 923 F.2d 1441 (11th Cir. 1991), the
Eleventh Circuit noted the conflict between state law, which
presumed that an injunction was an appropriate remedy, and the
federal preliminary injunction standard.  <u>Ferrero</u>, 923 at 1448.
Although the differences between state and federal law could have
led to "an outcome determinative result," the Eleventh Circuit
concluded that the federal standard controlled because Federal
Rule of Civil Procedure 65 is constitutional and within the
rules' enabling act.  See <u>id.</u> (discussing <u>Hanna v. Plumer</u>, 380
U.S. 460, 467-71 (1965)); <u>see also</u> Charles Alan Wright, Arthur R.
Miller, Mary Kay Kane, & Richard L. Marcus, Federal Practice &
Procedure § 2943 (Sept. 2012) ("Although the federal rule on
injunctions does not expressly provide any standards of
availability, it does purport to uphold the historic federal
judicial discretion to preserve the situation pending the outcome
of a case lodged in the court.  Thus the rule may be read as a
codification of the traditional federal equity practice and
although the standards are not articulated, there is enough
detail in Rule 65 to make it clear that it embodies an important
federal policy.").

   In applying the federal injunction standard, courts
recognize that state law would control on the issue of whether a
plaintiff is entitled to seek injunctive relief on the claim.
<u>See</u> <u>Sims Snowboards, Inc. v. Kelly</u>, 863 F.2d 643, 645-46 (9th
Cir. 1988); <u>Sullivan By & Through Sullivan v. Vallejo City</u>

13

1   Unified Sch. Dist., 731 F. Supp. 947, 956 (E.D. Cal. 1990).

2   After concluding that a plaintiff is entitled to seek a

3   preliminary injunction, however, courts often rely on the federal

4   standard in exercising their discretion to determine whether to

5   grant an injunction.  See Certified Restoration Dry Cleaning

6   Network, L.L.C. v. Tenke Corp., 511 F.3d 535, 541 (6th Cir. 2007)

7   ("[W]e apply our own procedural jurisprudence regarding the

8   factors to consider in granting a preliminary injunction . . .

9   ."); Equifax Servs., Inc. v. Hitz, 905 F.2d 1355, 1361 (10th Cir.

10  1990) ("[T]he doctrine of Erie R.R. Co. v. Tompkins, 304 U.S. 64

11  (1938), does not apply to preliminary injunction standards . . .

12  ."); United Nat'l Maint., Inc. v. San Diego Convention Ctr.

13  Corp., Civ. No. 07-2172 AJB, 2012 WL 3861946, at *4 (S.D. Cal.

14  Sept. 5, 2012) (applying state law to determine whether an

15  injunction is an available remedy on plaintiff's claim, but then

16  applying "federal law principles in determining whether to

17  exercise discretion to grant or deny an injunction that is

18  available under state law"); Travelers Cas. & Sur. Co. of Am. v.

19  W.P. Rowland Constructors Corp., Civ. No. 12-00390 PHX FJM, 2012

20  WL 1718630, at *2 (D. Ariz. May 15, 2012); Toschi v. Cnty. of San

21  Mateo, Civ. No. 07-3625 MMC, 2009 WL 982136, at *12 n.13 (N.D.

22  Cal. Apr. 13, 2009); Sullivan By & Through Sullivan, 731 F. Supp.

23  at 956 ("[F]ederal law provides the standards governing

24  plaintiff's motion for preliminary injunctive relief with respect

25  to both her federal and state law claims."); Kaiser Trading Co.

26  v. Associated Metals & Minerals Corp., 321 F. Supp. 923, 931 n.14

27  (N.D. Cal. 1970) ("[T]he best approach would be to look to state

28  law to determine if a preliminary injunction is permissible . . .

1   [and then] look to federal law to determine whether the court
2   should exercise its discretion."). But see Safety-Kleen Sys.,
3   Inc. v. Hennkens, 301 F.3d 931, 935 (8th Cir. 2002) (applying
4   state law irreparable injury standard); Outsource Int'l, Inc. v.
5   Barton, 192 F.3d 662, 673-74 (7th Cir. 1999) (noting that the
6   majority incorrectly "assumes that state rather than federal law
7   governs the standard for the grant or denial of a preliminary
8   injunction") (Posner, J., dissenting); E.I. DuPont de Nemours &
9   Co. v. Kolon Indus., Inc., --- F. Supp. 2d ----, ----, 2012 WL
10  4490547, at *10-12 (E.D. Va. 2012) (concluding that applying
11  federal standards to determination of injunctive relief would
12  "trench upon the rule of Erie").

13          Nonetheless, concluding that the federal preliminary
14  injunction standard controls does not necessarily foreclose
15  Shasta County's reliance on a presumption of irreparable harm.  A
16  line of Ninth Circuit cases has held that, "[i]n statutory
17  enforcement cases where the government has met the 'probability
18  of success' prong of the preliminary injunction test, we presume
19  it has met the 'possibility of irreparable injury' prong because
20  the passage of the statute is itself an implied finding by
21  Congress that violations will harm the public." United States v.
22  Nutri-cology, Inc., 982 F.2d 394, 398 (9th Cir. 1992).

23          It is uncertain, however, whether this presumption is
24  still good law.  First, it is tied to the Ninth Circuit's sliding
25  scale standard for preliminary injunctions that allowed a showing
26  of only the possibility of irreparable harm if the plaintiff made
27  a stronger showing of success on the merits.  In 2008, the
28  Supreme Court rejected this standard:

1      [T]he Ninth Circuit's "possibility" standard is too
2      lenient. Our frequently reiterated standard requires
    plaintiffs seeking preliminary relief to demonstrate that
3      irreparable injury is likely in the absence of an
    injunction. Issuing a preliminary injunction based only
4      on a possibility of irreparable harm is inconsistent with
    our characterization of injunctive relief as an
5      extraordinary remedy that may only be awarded upon a
    clear showing that the plaintiff is entitled to such
6      relief.

7  Winter, 555 U.S. at 22.

8      Second, in the patent context, the Supreme Court

9  rejected Federal Circuit precedent providing for the issuance of

10  a permanent injunction after proof of a patent violation in all

11  but exceptional cases. eBay Inc. v. MercExchange, L.L.C., 547

12  U.S. 388, 394 (2006). The Court explained that it has

13  "consistently rejected invitations to replace traditional

14  equitable considerations with a rule that an injunction

15  automatically follows a determination that a copyright has been

16  infringed" and held that "the decision whether to grant or deny

17  injunctive relief rests within the equitable discretion of the

18  district courts, and that such discretion must be exercised

19  consistent with traditional principles of equity, in patent

20  disputes no less than in other cases governed by such standards."

21  Id. at 392-94.

22      The Ninth Circuit extended the holding from eBay to

23  preliminary injunctions in patent cases. In discussing eBay, the

24  Ninth Circuit explained that the Court "warned against reliance

25  on presumptions or categorical rules" and found that the Federal

26  Circuit "had erred in adopting a categorical rule instead of

27  making a fact-specific application of the traditional four-factor

28  test for injunctive relief." Perfect 10, Inc., 653 F.3d at 979-

16

80.  The Ninth Circuit further explained, "The use of presumptions or categorical rules in issuing injunctive relief would constitute 'a major departure from the long tradition of equity practice,' and 'should not be lightly implied.'" Id. at 979 (quoting eBay Inc., 547 U.S. at 391).

Silver Sage Partners, Ltd. v. City of Desert Hot Springs, 251 F.3d 814 (9th Cir. 2001), also does not entitle Shasta County to a presumption of irreparable harm.  In Silver Sage, the Ninth Circuit recognized that it has "held that where a defendant has violated a civil rights statute, we will presume that the plaintiff has suffered irreparable injury from the fact of the defendant's violation." Silver Sage Partners, Ltd. 251 F.3d at 827 (citing cases where this presumption has been applied to claims under Title VII and the Fair Housing Act and for discrimination) (emphasis added); see also Antoninetti v. Chipotle Mexican Grill, Inc., 643 F.3d 1165, 1175-76 (9th Cir. 2010) (discussing Silver Sage in the context of an ADA case, but declining to decide whether the ADA "authorizes a district court to deny injunctive relief after finding a violation of the Act"). Here, Shasta County's nuisance per se claims are not based on violations of civil rights and it would be misguided to transport presumptions developed in civil rights cases to permitting and zoning code violations.

Given the uncertainty of the presumption discussed in Nutri-cology after Winter and the Supreme Court's "warn[ing] against reliance on presumptions or categorical rules" in eBay, the court will not simply presume Shasta County is likely to suffer irreparable harm.  Instead, the court will adhere to the

17

traditional preliminary injunction inquiry and evaluate whether
(2) Shasta County is likely to suffer irreparable harm in the
absence of preliminary relief; (3) the balance of equities tips
in its favor; and (4) an injunction is in the public interest.
Winter, 555 U.S. at 20.  In doing so, the court "'must balance
the competing claims of injury and must consider the effect on
each party of the granting or withholding of the requested
relief.'"  Id. at 24 (quoting Amoco Prod. Co. v. Gambell, 480
U.S. 531, 544 (1987)).

       Here, the greatest injury to Shasta County is that
plaintiffs appear to blatantly ignore the ordinances requiring
them to obtain building permits.  Plaintiffs' seemingly
intentional refusal to apply for building permits not only
prevents Shasta County from fulfilling its duty to enforce its
codes, but also sends a disfavorable message to other citizens
about the importance of complying with the County's permitting
requirements.  While these concerns are legitimate, they can be
adequately remedied after a trial on the merits and do not rise
to the level of irreparable harm.

       Nonetheless, even if Shasta County is entitled to a
presumption of irreparable harm under IT Corp. or Nutri-cology,
the presumption is rebuttable.  See IT Corp., 35 Cal. 3d at 72
(holding that the presumption is rebuttable); Nutri-cology, Inc.,
982 F.2d at 398 (discussing the district court's application of a
rebuttable presumption).  Here, plaintiffs have shown that they
are likely to suffer sufficient irreparable harm to rebut a
presumption of irreparable harm in favor of Shasta County.  If
Shasta County's motion for a preliminary injunction is granted,

plaintiffs have represented that they will be forced to layoff
their thirty-eight employees. (Anselmo Decl. ¶ 10.)  This loss
of employment is not insignificant in the current economy and in
an area where "[j]obs are scarce." (Id.)  The sudden closure of
the restaurant would also deplete the good will and patronage
that plaintiffs have established over the last three-and-a-half
years.  Plaintiffs explain that the winery property is located
approximately twenty-five miles from Redding in a rural area,
thus "it has taken a great deal of advertising and word-of-mouth
to develop the patronage since 2008." (Id. ¶ 9.)  Lastly, the
inability to practice his faith and worship in the chapel on his
property imposes a significant harm on Anselmo.

In balancing the harm to Shasta County against the
harms to plaintiffs in having to shut down their operations
before the entirety of this action is resolved on the merits
(Anselmo Decl. ¶ 10), the timing of Shasta County's motion cannot
be ignored.  Plaintiffs initiated this action in state court on
October 2, 2008.  During the three-and-a-half years this case was
pending in state court, Shasta County never sought a temporary
restraining order or preliminary injunction.  Shasta County has
not identified any change in circumstances that renders its need
for a preliminary injunction today any different than it was
during the pendency of this action.

"The purpose of a preliminary injunction is merely to
preserve the relative positions of the parties until a trial on
the merits can be held." Univ. of Tex. v. Camenisch, 451 U.S.
390, 395 (1981). "'A preliminary injunction . . . is not a
preliminary adjudication on the merits but rather a device for

19

preserving the status quo and preventing the irreparable loss of rights before judgment.'"  U.S. Philips Corp. v. KBC Bank N.V., 590 F.3d 1091, 1094 (9th Cir. 2010) (quoting Sierra On-Line, Inc. v. Phoenix Software, Inc., 739 F.2d 1415, 1422 (9th Cir. 1984)) (omission in original).  In seeking a preliminary injunction, Shasta County is not attempting to preserve any property or right, but is seeking the ultimate relief it will likely seek at the close of trial.  Given that this case has been pending for over three-and-a-half years and trial was set to commence in state court on January 6, 2013, there is no reason why a trial in this court cannot commence forthwith.

Lastly, with respect to the public interest, the court does not find that this factor weighs heavily for either side. The public undoubtedly has an interest in having Shasta County's code equally enforced.  Waiting until the trial to make this determination, however, does not appear to pose harm to the public because, aside from alleged ADA violations that are not at issue in this action, Shasta County has not suggested or submitted any evidence demonstrating that any of the structures on the winery property pose a risk to public health or safety. Anselmo, on the other hand, has submitted a declaration indicating that the winery, restaurant, and tasting room have met all California Health Department "food and cleanliness inspection conditions and have routinely been inspected for all purposes in regard to food safety, water and sewage, and waste disposal" and that there are no outstanding violations.  (Anselmo Decl. ¶ 17.) Plaintiffs also submitted a report from a retained architectural and construction expert, which concludes that the chapel "has

1  been constructed in substantial conformance with building codes

2  and conforms to or exceeds the standards of good building

3  practices in the state of California."  (Schraibman Decl. Ex. A

4  (Docket No. 88).)

5          Accordingly, while Shasta County is likely to prevail

6  on its nuisance per se claims based on plaintiffs' failure to

7  obtain building permits for the structures on the winery

8  property, it has failed to show that it is likely to suffer

9  irreparable harm, that the balance of equities tips in its favor,

10 or that an injunction is in the public interest.  The court must

11 therefore deny Shasta County's motion for a preliminary

12 injunction.

13         IT IS THEREFORE ORDERED THAT Shasta County's motion for

14 a preliminary injunction be, and the same hereby is, DENIED.

15         IT IS FURTHER ORDERED THAT a Status (Pretrial

16 Scheduling) Conference is set in this matter on November 26,

17 2012, at 2:00 p.m. in Courtroom No. 5.  The parties shall submit

18 a joint status report no later than November 13, 2012, that

19 proposes deadlines for the close of discovery and filing of

20 dispositive motions and dates for the pretrial conference and

21 trial.

22 DATED:  October 24, 2012

23

24                                                    _____

     WILLIAM B. SHUBB

25   UNITED STATES DISTRICT JUDGE

26

27

28

                                21